HAWTHORNE, Justice.
 

 Defendant-appellant B. Elton Cox, charged in a bill of information bearing No. 44,287 on the docket of the Nineteenth Judicial District Court for the Parish of East Baton Rouge with the crime of defamation denounced by R.S. 14:47, was tried, convicted, and sentenced by the court to be confined in the parish jail for one year, to pay a fine of $3000.00, and in default of payment of the fine to be confined in the parish jail for an additional year.
 
 [1]
 

 The bill of information charges that the accused violated R.S. 14:47 in that he “did maliciously publish and express to parties other than the person defamed statements which tended to expose Judge Fred A. Blanche, Jr., to hatred, contempt, and ridicule, and to deprive him of the benefit of public confidence and social intercourse; said publication and expression being oral and to the effect that it was common knowledge that the oppressed Negroes who appeared in Judge Blanche’s court had to pay a fee which inured to Judge Blanche’s
 
 *751
 
 benefit to keep from going to the penitentiary * * *
 
 ”.
 

 [2]
 

 R.S. 14:47 reads thus:
 

 “Defamation is the malicious publication or expression in any manner, to anyone other than the party defamed, of anything which tends:
 

 “(1) To expose any person to hatred, contempt, or ridicule, or to deprive him of the benefit of public confidence or social intercourse; * * * ”
 

 Appellant’s first contention is that Louisiana’s defamation statute is unconstitutional per se as a violation of the freedom of speech guaranteed by the First Amendment to the Constitution of the United States. This issue has already been decided adversely to appellant’s contention in the cases of State v. Webster, 245 La. 523, 159 So.2d 140, and State v. Moity, 245 La. 546, 159 So.2d 149, both of which cite and rely on decisions of the United States Supreme Court and other courts.
 
 [3]
 

 Appellant’s next contention is that, in the light of the holding of the Supreme Court of the United States in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, the Louisiana statute as applied to criticism of a public official is in any event unconstitutional as a violation of freedom of speech.
 

 In the New York Times case the Supreme Court was considering Alabama law dealing with civil libel. Here we are concerned with a criminal statute defining and denouncing the crime of defamation, for a conviction of which all essential elements of the crime, malice being one, must be proved beyond a reasonable doubt.
 

 Louisiana R.S. 14:49 grants to persons charged with the crime of defamation under R.S. 14:47 a qualified privilege under certain situations as there set forth, one of these being where the expression is upon the conduct of a person in respect to public affairs and is made in the reasonable belief of its truth.
 
 [4]
 
 The statute provides that in such a case actual malice must be proved regardless of whether the expression is true or false. The redactors’ comment un
 
 *753
 
 der the article explains that when a qualified privilege exists, no presumption of malice would arise.
 

 Appellant argues that our criminal defamation article, R.S. 14:49(2), is inconsistent with the New York Times holding in that the criticism of the official conduct of public officials is privileged under outlaw only where it is a comment
 
 made in the reasonable belief of its truth.
 
 He says: “ * * * No such condition was articulated by the U. S. Supreme Court which required proof of actual malice without regard to the reasonableness of the petitioners’ belief in the truth of what they said. * * * This additional burden upon, the defense has been eliminated by the U. S. Supreme Court. Since the New York Times case, in order to sustain any verdict of prosecution for defamation of a public official, civil or criminal, the plaintiff or the State must affirmatively prove actual malice, regardless of whether or not the defendant had a Teaonable belief’.”
 

 To support this argument appellant has selected this portion of the Supreme Court decision in the New York Times case:
 

 “The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice’ — that is, with knowledge that it was false or with reckless disregard of whether it was false or not. * * * ”
 

 This statement was made near the end of the court’s discussion of whether those making
 
 false
 
 defamatory statements are entitled to the protection and the constitutional safeguards of the First Amendment. Under Alabama law the only defense to libelous statements was
 
 truth,
 
 and the right of fair comment was dependent upon truth of the libelous statements. The court was mainly concerned about making it clear that even those making
 
 false
 
 libelous statements are entitled to constitutional safeguards, but it was well understood throughout the opinion that only those false statements, honestly made or made in good faith, were within the court’s discussion.
 

 At the outset of the discussion the court observed of the Alabama law of libel:
 

 “ * * * Good motives and
 
 belief in truth
 
 do not negate an inference of malice, but are relevant only in mitigation of punitive damages if the jury chooses to accord them weight. * * * ” (Italics here and elsewhere are ours.)
 

 Again, the court stated:
 

 “ * * * a defense for erroneous statements
 
 honestly made
 
 is no less essential here than was the requirement of proof of guilty knowledge which, in Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205, we held indispensable to a valid con
 
 *755
 
 viction of a bookseller for possessing obscene writings for sale. * * * ”
 

 Immediately after the quotation from the decision that the appellant relies on the court said: “ * * * An oft-cited statement of a
 
 like
 
 rule, which has been adopted by a number of state courts, is found in the Kansas case of Coleman v. MacLennan, 78 Kan. 711, 98 P. 281 [20 L.R.A.,N.S., 361] (1908). * * *” In the quotation adopted from that decision the belief in truth as a prerequisite of the privilege is spelled out:
 

 “ * * * where an article is published and circulated among voters for the sole purpose of giving
 
 what the defendant believes to be truthful information *
 
 * * the article is privileged * * * and in such a case the burden is on the plaintiff to show actual malice * *
 

 We cannot agree with appellant therefore that the New York Times case is authority for holding that a condition that the publication or expression must be made in the reasonable belief of its truth for the privilege to apply violates the constitutional safeguards of the First Amendment.
 

 We view our statute as being fully in accord with the New York Times pronouncements, conceding that case of civil libel is applicable to our criminal defamation legislation, and as fully safeguarding those accused under it in conformance with the First Amendment. Our statute permits the qualified privilege to exist, regardless of whether the publication was true or
 
 false,
 
 when it is a comment made in the reasonable belief of its truth upon the conduct of a person in respect to public affairs,, and in such case
 
 actual malice
 
 must be proved by the State. Our criminal statutory requirements for proving actual malice are in accord with those set out by the New York Times case for civil libel. Our statute is clearly constitutional when measured by the standards set out in the New York Times case to satisfy the First Amendment.
 

 Assuming, arguendo, that there is no conflict between our legislation and the Times decision, appellant argues further on the basis of Mr. Justice Goldberg’s concurring opinion in that case that the First Amendment affords citizens an absolute privilege to criticize official conduct. We are not prepared to go thus far. In our opinion our statute is not repugnant to the First Amendment simply because it recognizes that the public have an interest in the maintenance of the public character of public men. Public affairs could not be conducted by men of honor, with a view to the welfare of the country, if attacks upon them could' be made at will, destructive of their honor and character and made wholly without foundation. Our statute sufficiently protects those honestly criticizing their public officials as to their official conduct to satisfy the First Amendment,
 
 *757
 
 but it properly forbids unjustified malicious attacks upon them.
 

 Another contention is that the district attorney’s failure to timely recuse himself denied to the accused due process and the equal protection of the laws. For a proper understanding of this contention it is neces-. sary that we review certain steps in the progress of the case as disclosed by the record filed in this court.
 

 The defendant was charged with defamation in two bills of information, both filed on October 1, 1962, and both alleging the offense as having been committed op September 4, The charges are couched in identical language in the bills except that in one the accused is charged with defaming a judge of the district court and in the other with defaming the district attorney. In the case charging defamation -of the district attorney, the district attorney properly recused himself, though the exact date of his recusation is not shown by the record. On October 17 a motion to'recuse the district attorney was filed in the case in which the accused was charged with defaming the judge, and this motion was renewed on November 16. It is not denied that by October 17, the date this motion was first filed, the district attorney had recused himself in the case in which he was the injured party, and that the incident in which defendant is alleged to have defamed the district attorney was the same incident as that in which defendant allegedly defamed the district judge.
 

 The minutes of the • court show that on November 27, two days before the case was fixed for trial, the motion to .recuse the district attorney was taken up,,argued, submitted, and taken under advisement by the court. After this motion was taken under advisement, a motion to desegregate the courtroom and the courthouse was taken up, argued, and overruled. Application for a bill of particulars was also argued and denied. A motion to quash was likewise argued and overruled. In addition an application for a change of venue was submitted without argument or evidence, and was denied. The district attorney or a member of his staff argued all of these various motions. After the court had ruled on these motions, the district attorney orally moved that he and his staff be recused, and this motion was granted by the trial judge. The court then appointed an attorney to conduct the prosecution in both cases. Moreover, as previously stated, the district attorney had at some time before October 17 recused himself in the case in which the accused was charged with defaming him. Members of his staff, however, had thereafter had that case fixed for trial, filed an answer to a motion for a bill of particulars, and amended the bill of information.
 

 
 *759
 
 On this same day, November 27, it was noted in the minutes of the case of the defamation of the district attorney that special counsel had been appointed, and that by agreement of counsel for the State and counsel for the accused the preliminary motions to desegregate the courtroom, motion to quash, etc., were submitted to the court on the arguments heard in the “judge’s case”, with counsel for the defense reserving all objections and bills of exception which had been taken in this case. The court overruled all the preliminary motions, and objection was made to his rulings and a formal bill reserved as to all of the motions.
 

 The trial of the case charging defamation of the judge was begun on November 29 and completed on November 30. On the latter date the accused was adjudged guilty. On this same day counsel for the State and counsel for the accused stipulated that all the evidence taken during the trial of the case in which the accused was charged with defaming the judge would be the same in the case in which he was charged with defaming the district attorney, and that all bills of exception reserved in the “judge’s case” would be reserved in the “district attorney’s case”. Under this stipulation the case of defamation of the district attorney was submitted to the court, and the accused was adjudged guilty.
 

 It will thus be seen from the face of the record that one case was tried on the merits- and the other submitted on this same evidence; that the same bills of exception are by stipulation to be considered in each case; that the defamatory statements in both cases arose out of the same incident; that after the motion to recuse in the case charging defamation of the judge was submitted to the trial judge and taken under advisement, the district attorney and members of his staff appeared for the State and argued various exceptions, motions, and pleas, as set out above; that
 
 only
 
 after the judge had ruled upon these motions and exceptions did the district attorney ask to be recused. Furthermore, in the case charging defamation of the district attorney, after his recusation members of his staff actually appeared and took steps in the prosecution of that very case.
 
 [5]
 
 The case charging the defendant with defamation of the district attorney was submitted on the evidence taken in the case charging defamation of the judge, and a verdict of guilty was rendered on that evidence— evidence which included, according to briefs filed in this court both by the defense and by the State, testimony by the district attorney.
 

 Under these circumstances it is perfectly patent that the cases were treated as one
 
 *761
 
 for the purpose of trial and verdict, that a conviction in the case in which the defendant was charged with defaming the judge was tantamount to a conviction in the case in which he was charged with defaming the district attorney, and that the personal interest of the district attorney in one was as great as in the other.
 

 The district attorney was here confronted with an accused who had allegedly made statements which defamed his character; he was the injured party. A sincere and conscientious public official like District Attorney Pitcher would naturally be outraged by the alleged defamatory statements, as would any person having his good reputation. He would naturally feel that a conviction of the accused would be a public vindication of the wrong done him, and he would have a great personal interest in seeing that the accused was convicted. He appeared at certain stages of this prosecution as a prosecutor and appeared later as a prosecuting witness with a personal interest. The two roles are incompatible. See State v. Jones, 306 Mo. 437, 268 S.W. 83; State v. Nicholson, 7 S.W.2d 375 (Mo.App.).
 
 [6]
 
 In our opinion the Missouri courts take the proper view of this matter.
 

 Article 310 of the Code of Criminal Procedure makes it mandatory that the district judge recuse the district attorney
 
 *763
 
 where any of the causes set forth in the article exist. This article provides that where such causes exist, “Any district attorney shall he recused by the judge in criminal cases * * * ”. This court construed the cause for recusation set forth in Subsection (3) of the article to be applicable to cases where the district attorney had a personal interest in convicting the accused. State v. Tate, 185 La. 1006, 171 So. 108. In State v. Marcotte, 229 La. 539, 86 So.2d 186, this court concluded that the Tate case was full authority for the principle “that when the district attorney is personally interested in gaining a conviction, his interest is adverse to that of the State, as the State demands no victims, seeking equal and impartial justice only, it being just as much the duty of the prosecution to see that no innocent man suffers as it is to see that no guilty one escapes”.
 
 [7]
 

 Article 557 of the Code of Criminal Procedure provides that no appellate court shall grant a new trial “unless in the opinion of the court * * * after an examination of the entire record, it appears that the error complained of * * * is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right”. Because of the essential identity of the two cases, it was the mandatory duty of the judge in the instant case to order the recusation of the district attorney when it was disclosed to him that the district attorney was, in effect, an injured party in both cases and had a personal interest in securing the conviction; and the judge’s failure to do so was a substantial violation of the constitutional and statutory rights of the accused to the fair and impartial trial guaranteed by the Constitutions of this state and the United States.
 

 It is true that at the time the district attorney voluntarily recused himself after he or his staff had taken numerous steps in the prosecution, the accused objected to such recusation. But the constitutional and statutory rights of the accused had already been violated, and the objection did not have a retroactive effect of waiving these rights already prejudiced.
 

 Since we have concluded that the accused is entitled to a new trial, we find it unnecessary to discuss the various other contentions made in brief and argument on this appeal, as the circumstances giving rise to those contentions may not occur at a subsequent trial.
 

 
 *765
 
 For the reasons assigned the conviction and sentence are annulled and set aside, and the case is remanded to the district court for a new trial.
 
 [8]
 

 [1]
 

 . Appellant Cox was charged jointly with Arthur Jelks, but a severance was ordered.
 

 [2]
 

 .The accused was charged also with defamation in a bill of information bearing No. 44,28S on the docket of the district court, in language identical with that of the bill in the instant case except that it charged the accused with defaming the district attorney. As will be set out fully later, stipulations were made which in effect made the two cases one. Defendant was adjudged guilty in both cases on the same evidence, and received the same sentence in each.
 

 [3]
 

 . See also State v. Garrison, 244 La. 787, 154 So.2d 400, and authorities cited.
 

 [4]
 

 . R.S. 14:49 pertinently provides:
 

 “A qualified privilege exists and actual malice must bo proved, regardless of whether the publication is true or false, in the following situations:
 

 “ * * *
 

 “(2) Where the publication or expression is a comment made in the reasonable belief of its truth, upon,
 

 “ (a) The conduct of a person in respect to public affairs * *
 

 [5]
 

 . Recusation of district attorney recuses liis assistants. State v. Buhler, 132 La. 1065, 62 So. 145.
 

 [6]
 

 . In State v. Jones the district attorney was personally involved in the incident out of which the charge arose. The court of Missouri stated that the trial judge had inherent power, independent of the statute, to appoint a special prosecuting attorney when the district attorney was for any reason disqualified, and that his interest in this case made him disqualified. In State v. Nicholson the accused was charged with the unlawful sale of intoxicating liquor. The district attorney had sworn out a search warrant, had accompanied the sheriff on the search, and was a witness for the State. The Missouri court in holding the district attor- ' noy disqualified under these circumstances said:
 

 “ * * * It is commendable for prosecuting attorneys to be deeply interested in enforcing the law and to use their utmost ability and know'ledge to see that the state is properly represented, but it is also their duty to keep in mind the fact that the duty of a prosecuting attorney is not that of a partisan advocate, but it is his duty to treat the defendant fairly under all circumstances and to conduct trials on the part of the state in such a way as to leave no room for criticism as to the methods used in trying to secure convictions. It is much more desirable to retain confidence in the purpose of the courts and other officers to enforce the law by fair and just means than to try to secure convictions in all cases at all hazards. * * * There is usually no necessity for [accompanjdng the sheriff] and may lay him open to the charge of allowing his zeal to warp his sense of fairness in his efforts to secure a conviction.
 

 <> * * *
 

 “Nothing will detract more from the proper enforcement of the law than for the people to be impressed that the courts or prosecuting officers are unfair in their treatment of those charged with the law’s violation. * * * ”
 

 [7]
 

 . The writer of the instant opinion dissented in State v. Marcotte, pointing out that he did not subscribe to the holding of this court in State v. Tate. As observed by the footnote in the Marcotte case, however, the holding in the Tate case is now the established jurisprudence of this court.
 

 [8]
 

 . In this court the “district attorney’s ease” was consolidated with the instant case for the purpose of argument, but we have rendered a separate decree therein. See 246 La. 765, 167 So.2d 359.