PER CURIAM.
The Lake Charles Firefighters Association Local Union No. 561, and several individual members thereof, seek to enjoin the City of Lake Charles from implementing certain portions of the 1970-1971 budget adopted by the City Council. The portions attacked provide that salary increases to members of the fire and police departments be subject to certain deductions. Plaintiffs pray further for a mandatory injunction ordering the city to increase their salaries to a greater amount. The defendant, City of Lake Charles, filed Exceptions of No Right and No Cause of Action, which were sustained by the district judge. Plaintiffs appealed.
EXCEPTION OF NO RIGHT OF ACTION
The alleged basis for the exception of no right of action is that “the relief sought by the plaintiffs could only come about by legislation and not by a judicial proceeding.” At the hearing on this exception, evidence was introduced to show that the mayor did not enter into any contract on behalf of the city with the plaintiffs regarding wage increases. Also, evidence to show that the City Council of the City of Lake Charles did not adopt any ordinance *374 authorizing the mayor to enter into any wage contract with the plaintiffs. On the other hand, plaintiffs contend the mayor did enter into a contract with plaintiffs for wage increases and that this contract was either authorized by the City Council or that the Council is estopped to deny such authorization.
LSA-C.C.P. Article 927 provides for peremptory exceptions including “No right of action, or no interest in the plaintiffs to institute the suit.” Jurisprudence holds the exception of no right of action addresses itself only to the alleged lack of interest of the plaintiff in the subject matter of the litigation, Johnson v. Iowa Rice Dryer, Inc., 226 So.2d 194 (La.App. 3rd Cir. 1969); Dyer v. Davis, 189 So.2d 678 (La.App. 1st Cir. 1966). Of course, under LSA-C.C.P. Article 931 evidence may be introduced to support or contradict the exception of no right of action.
In the present case, it is clear that plaintiffs have an interest in the subject matter of this litigation. They are the ones who are seeking and will receive wage increases in the event judgment is rendered for the plaintiffs. The exception of no right of action must be overruled.
EXCEPTION OF NO CAUSE OF ACTION
Under LSA-C.C.P. Article 931 “No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action.” However, in the present case, counsel for all parties agreed to refer the exception of no cause of action to the merits and to proceed with the introduction of evidence on the preliminary injunction. Following this stipulation, defense counsel filed his answer and the matter was heard on the merits.
 Since, under Article 931, evidence cannot be considered on the exception of no cause of action, defendant’s consent to refer the exception to the merits is an abandonment or waiver of the exception. It is consent to the court to decide the case on the merits. See Di Fatta v. Campagna, 190 So.2d 157 (La.App. 4th Cir. 1966), writ of certiorari refused. See also Robinson v. Herring, 20 So.2d 811 (La.App. 2d Cir. 1945) and Anderson v. Harvey & Jones, 154 So. 495 (La.App. 2d Cir. 1934) which hold that where an exception of no cause of action is referred to the merits, the entire record may be considered in deciding the case. Of course, these rules apply only where defendant consents to refer his exception to the merits. If he objects, then he has a right to have his exception of no cause of action decided solely on the basis of the allegations in plaintiff’s petition, State ex rel. Varnado v. Louisiana Highway Commission, 177 La. 1, 147 So. 361; Hughes v. Grant Parish School Board, 145 So. 794 (La.App. 2d Cir. 1933).
THE ALLEGED ORAL AGREEMENT
On the merits, the first issue concerns an alleged oral agreement, whereby Mayor James E. Sudduth of the City of Lake Charles agreed to increase the salaries of firemen and policemen. The evidence shows that in March of 1970 the firemen were picketing the Lake Charles city hall, and were threatening a work slowdown because of Mayor Sudduth’s alleged refusal to enter into “meaningful collective bargaining” regarding salary increases. The mayor’s response to the threat of a strike was a notice to all city employees that disciplinary action, under existing Civil Service rules, would be taken against any individual found in violation.
In an effort to resolve these differences, Mayor Sudduth met in Baton Rouge on March 6, 1970, with various officials of the Louisiana AFL-CIO and the Lake Charles Firefighters Association. Plaintiffs contend that in this meeting an oral agreement was reached whereby they agreed to remove their picket line from around the Lake Charles city hall and to cease any further demands for wage in *375 creases. Furthermore, various union officials and members agreed to lobby for the passage of additional taxes in the 1970 session of the Louisiana Legislature, which would yield additional revenues to the City of Lake Charles. In return for these commitments, plaintiffs contend the mayor agreed to use any additional revenues received by the City of Lake Charles from new state taxes for an “across-the-board” pay raise for all employees of the City of Lake Charles.
On the other hand, the mayor testified that nothing more than oral discussions took place in Baton Rouge and that neither he nor the plaintiffs made any binding agreement. The mayor explained that he could not agree to wage increases because this required an ordinance of the Lake Charles City Council.
In any event, Act No. 211 of the Regular Session of the Louisiana Legislature of 1970 was adopted, and provided several million dollars to be divided amongst Louisiana municipalities and parishes. Mayor Sud-duth estimated that approximately $220,000 would be received by the City of Lake Charles and, pursuant to provisions of the Lake Charles City Charter, he proposed in the budget for 1970-1971 that these sums be used for a $60 per month pay increase, in the form of a uniform and on-the-job meal allowance, for all city employees, except firemen and policemen. His reason for excepting firemen and policemen was that, in the 1970 session of the legislature, they received increased state supplements to their salaries by the funding of Act No. 588 of 1968. The budget submitted by the mayor proposed that the additional state supplements received by the firemen and policemen under this 1970 Act be deducted from the $60 per month in such a manner that all city employees would receive the same net salary increase.
These budget proposals were submitted to the City Council in the form of an ordinance. The firemen and policemen appeared at the Council meetings and opposed those portions of the budget at issue. Nevertheless, the Council adopted the budget.
Section 2-12 of the Home Rule Charter of the City of Lake Charles provides that “ . . . any action that creates a contractual obligation of the city; . . .or any action that requires an expenditure of funds either immediately or in the future; shall be by ordinance.” Under these provisions, it is clear that the mayor could not enter into a contract with the plaintiffs for wage increases except upon authorization by ordinance of the City Council. There was no such ordinance in this case. Hence, the alleged oral agreement made at the meeting in Baton Rouge could be of no effect whatever, even if the evidence showed the mayor did agree to an across-the-board wage increase. Of course, as stated above, the mayor denies any such agreement.
ESTOPPEL
Although the alleged oral agreement was not authorized by ordinance, plaintiffs contend the City of Lake Charles is estopped from denying the mayor’s authority by accepting the benefits of the agreement. The benefits referred to are that the firemen ceased picketing the city hall and did not strike. Also, that the City of Lake Charles has accepted from the state its portion of the state taxes which the firemen and various other interested groups were successful in persuading the 1970 Legislature to adopt. Plaintiffs rely on New Orleans Firefighters Association, Local No. 632 v. City of New Orleans, 204 So.2d 690 (La. App. 4th Cir. 1967) for the proposition that by accepting the benefits of the oral agreement made in Baton Rouge, the city is estopped to deny the authority of the mayor. The New Orleans case involved a verbal agreement between the New Orleans Firefighters union and the chief administrative officer of the city, providing for working schedules and overtime. The city operated under this agreement for about one year. However, the chief administrative officer then declared a state of emergency making it mandatory that fire *376 men work 60 hours per week on regular pay, and receive overtime for work in excess of 60 hours per week. The firemen sued to enjoin the city from putting these new rules into effect. In defense, the city contended the original oral agreement with the chief administrative officer was of no effect because of noncompliance with a city charter requirement that contracts involving financial obligations by the city be approved by the Department of Finance. The court held that the city “in accepting the benefits of the agreement, is now es-topped from denying that it had the authority to enter into it.” We express no opinion as to the correctness of the New Orleans decision. However, it is clear that case is readily distinguishable from the present matter and is not authority for the proposition that the doctrine of equitable estoppel is applicable here.
In the recent case of American Bank & Trust Company v. Trinity Universal Insurance Company, 251 La. 445, 205 So.2d 35 (1967) our Supreme Court held:
“Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence. (Citations omitted)
“[4] Since estoppel bars the normal assertion of rights, courts apply the doctrine cautiously. (Citations omitted)
“[5] To raise an equitable estoppel, the record must establish not only that the pleader relied upon a representation or other conduct, but also that he was justified in so doing. Justifiable reliance is fundamental.” (citations omitted)
 The doctrine of equitable estoppel is applicable to municipalities where the act or conduct relied on to create the estoppel was within its corporate power, Rogers v. First Sewerage District of City of Lake Charles, et al., 171 So.2d 820 (La.App. 3rd Cir. 1965). Of course, the City of Lake Charles has the corporate power to increase the wages of its employees. However, the necessary elements of equitable estoppel are not present. In the first place, it is not shown that the firemen relied on any representation by Mayor Sudduth or the City Council to their detriment. The decision of the firemen to stop picketing and cease their threats to strike could as well have been based on their fear of disciplinary action under Civil Service rules, instead of any hope of receiving an across-the-board pay increase from the city. Of course, as stated above, Mayor Sudduth denied any oral agreement to an across-the-board pay increase. We fail to see how the firemen’s actions in removing the picket lines and deciding not to strike can be considered a benefit which the city accepted under the alleged oral agreement.
As to the contention that the city is estopped by accepting its share of the proceeds of the new state taxes, this is simply an action which the city took pursuant to state law. It was not an action which the city took pursuant to any alleged oral agreement in Baton Rouge.
This situation is readily distinguishable from that in the New Orleans Firefighters case, supra, where the city voluntarily accepted the benefits of an oral agreement between the firemen and the chief administrative officer as to hours of work and overtime pay. The rationale of the New Orleans case is that since the city followed the contract for over a year, it was es-topped to deny that the chief administrative officer was not authorized to enter into it.
We conclude the doctrine of equitable estoppel has no application here.
*377 CONTENTION THAT THE BUDGET ORDINANCE VIOLATES THE FIREMEN’S STATE SUPPLEMENTAL PAY LAW, ACT NO. 588 OF 1968
Act No. 588 of 1968 provided for supplements by the state to the salaries of firemen employed by municipalities “in addition to the compensation now paid by any municipality.” During the regular session of 1970, the Louisiana Legislature appropriated money to fund Act No. 588. But, under the express language of the act, these increased salaries are in addition to any compensation being paid as of 1968 and not as of 1970. The 1970 budget provisions attacked here do not violate Act No. 588 of 1968, since the firemen are to receive their full state supplemental pay in addition to any amounts which they were receiving as of 1968.
ALLEGED VIOLATION OF WRITTEN “WORKING AGREEMENT CONTRACT” BETWEEN THE MAYOR AND THE FIREMEN
Plaintiffs’ next contention is that the implementation of the city budget should be enjoined because the city violated a “Working Agreement Contract” entered into between the mayor and the firemen’s union in 1966. This agreement contains the following provision:
“Collective bargaining with respect to wages, hours, working conditions and all other conditions of employment shall be conducted by authorized representatives of the Union and the authorized representatives of the Employer. Negotiations shall be conducted during working hours. Agreements reached between parties of this contract shall become effective only when signed by the President of the Lake Charles Fighters Association and the authorized representative or representatives of the Employer.”
The agreement was signed by the mayor and by the president of the firemen’s union, but it was never approved by the City Council. Nevertheless, plaintiffs contend that the agreement requires mandatory collective bargaining with respect to wages and that the city refused to bargain with plaintiffs concerning the salaries provided by the 1970-1971 budget.
The first answer to this argument is that the agreement was not authorized or approved by the City Council, and hence is not a binding contract with the city. Furthermore, the evidence shows that the mayor did not refuse to bargain with plaintiffs respecting wages. On the contrary, he discussed the matter with the union representatives. Of course, he did not agree fully to their demands. When the budget was presented to the City Council, representatives of the union appeared at the meeting and tried to persuade the Council to amend the budget. The Council refused. This was a matter within their legislative discretion.
VIOLATION OF DUE PROCESS
Plaintiffs’ final contention is that the failure of the city to abide by the “Working Agreement Contract” constitutes a flagrant breach of contract and a denial of due process and equal protection under the law. Having reached the conclusion above that there was no binding contract and no breach of any such contract, this constitutional argument falls.
DECREE
For the reasons assigned, the judgment appealed is amended so as to overrule the exceptions of no right and no cause of action. Judgment is now rendered on the merits rejecting plaintiffs’ demands for preliminary injunctions. All costs in the district court and all costs of this appeal are assessed against the plaintiffs appellants.
Affirmed, as amended.