237 So.2d 392

**STATE of Louisiana**

v.

**John K. SNYDER.**

No. 50405.

June 8, 1970.

J. Minos Simon, Lafayette, for defendant-relator.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., Robert P. Jackson, Asst. Dist. Atty., Jules L. Davidson, Jr., Asst. Dist. Atty., for plaintiff-respondent.

McCALEB, Justice.

Relator, under indictment for perjury, seeks the recusation of the district attorney, alleging that he "is possessed of a personal interest in the nature of an inveterate hostility and uncompromising bias toward and against" defendant, "which is adverse to that of the State in its quest for the equal and impartial administration of justice * * *." After an evidentiary hearing below, relator's motion was denied, and he applied for relief here under our supervisory jurisdiction. We granted certiorari and the matter has been argued and submitted for determination.

The present perjury charge, as well as some fifteen other indictments against relator for defamation, arise out of a recent Democratic Primary Election held in the City of Alexandria in which relator, Snyder, C. Edward Karst, the incumbent, Bowden and others were the candidates for the office of mayor of the city. The campaign was admittedly a heated one, in which Mr. Edwin O. Ware, the District Attorney, initially supported the incumbent, Bowden, and, after that candidate was eliminated in the first primary, vigorously campaigned for Mr. Karst in the second primary. In the contest between Karst and relator, Karst was the successful candidate.

Thereafter, on May 29, 1969, the grand jury for Rapides Parish brought fourteen indictments against relator charging him with having defamed various individuals, including Karst and the district attorney, during the campaign. Karst also filed a civil suit against relator for damages sustained as a result of relator's alleged defamation of him. In connection therewith, Karst propounded certain interrogatories to relator. After relator answered the interrogatories, he was indicted for the offense of perjury, it being charged that he gave false answers under oath in the civil suit filed by Karst, knowing the answers to be false and untrue.

Relator filed motions to recuse the district attorney in all the proceedings charging him with criminal defamation as well as in this perjury prosecution. The district attorney resisted the motions in all cases. However, the indictment charging relator with defaming the district attorney

was subsequently nol-prossed [1] and, at a later date, an evidentiary hearing was held on the motion to recuse in one of the other defamation cases. In that matter the motion was overruled.

Relator alleges, among other things, in his motion for recusation of the district attorney that, during the mayoralty campaign, the district attorney became engaged in activities in opposition to relator's candidacy; that, acting in his official capacity, he publicly expressed a judgment that relator was guilty of criminal offenses despite the fact that he had no evidence to justify such a statement which was made solely for the purpose of injuring relator; that said statements of the district attorney evidence his gross bias and hostility toward relator; that the district attorney advised the grand jury to return an indictment charging relator with defamation of the district attorney and later caused the grand jury to indict relator for perjury, solely in furtherance of his vengeful disposition and hostility toward relator, and in gratification of his friendship toward and interest in Mr. Karst; and that the district attorney knowingly suppressed, concealed and withheld from the grand jury the fact that the answers to the interrogatories given by relator in the Karst suit were not made under oath.

After a hearing on the motion to recuse in this perjury prosecution, wherein the evidence taken on the motion to recuse in the other defamation case was introduced as part of the record, the judge overruled the motion, simply stating that he was of the opinion that relator was not entitled to the relief sought.

Imprimis, we note the district attorney contends in his brief that we should not examine the testimony taken below for the reason that, whereas relator reserved a bill of exceptions to the judge's ruling, he has failed to perfect a formal bill with the testimony attached thereto. During oral argument, however, the district attorney stated that he was not pressing this point and desired a ruling by this Court on the merits of the motion to recuse.

Whether such a waiver is binding we need not decide for, in any event, we find the complaint untenable. Under our procedural system, the reservation and perfection of bills of exceptions are essential only in criminal trials to secure appellate review of final judgments either on appeal, or under our supervisory jurisdiction, for the correction of errors or irregularities which are not patent on the face of the record. It is not required in a case like this wherein our supervisory jurisdic-

1. The record does not show why the district attorney nol-prossed this charge. However, it is certain that, had not the charge ben nol-prossed, the district attorney would have been obliged to recuse himself in that case. See State v. Cox, 246 La. 748, 167 So.2d 352.

tion has been invoked to review an interlocutory order of an inferior court. Indeed, this Court has held otherwise in overruling a motion to dismiss an appeal from an interlocutory order denying a motion to recuse a district judge. In State v. Perkins, 124 La. 947, 50 So. 805 (1909), the Court, in rejecting a complaint similar to the one made here, declared:

"* * * The issue of recusation vel non therefore may be raised in any case, and may be said to be common to cases of all kinds. Hence there is no warrant for applying the strict rules of criminal procedure to motions to recuse. We do not deem a formal bill of exception necessary in a case of this kind, where all the pleadings and evidence adduced below appear in the transcript. To require a technical bill of exception would serve no useful purpose."

On the merits the case presents a single issue of fact, i. e., whether relator has established by a fair preponderance of evidence that the district attorney "Has a personal interest in the cause which is in conflict with fair and impartial administration of justice * * *" as provided by Article 680(1) of the Code of Criminal Procedure. This provision conforms with our prior jurisprudence. See State v. Tate, 185 La.

1006, 171 So. 108; State v. Marcotte, 229 La. 539, 86 So.2d 186; State v. Melerine, 236 La. 881, 109 So.2d 454; and State v. Cox, 246 La. 748, 167 So.2d 352.

A review of the record reflects that for the most part the facts are not seriously disputed. The district attorney acknowledged in his testimony that because of the derogatory statements made by relator during the campaign, he developed a strong personal animosity toward relator which became more pronounced in the second primary. For this reason, he actively campaigned against relator, and he stated that, while this animosity existed, he made the following public statement which was broadcast over Station KSYL and published in the Alexandria Town Talk:

"All the tapes of Mr. Snyder's radio programs definitely will be brought to the Grand Jury and that, ladies and gentlemen, is not a threat, it's a very sincere promise made by me, that these tapes will be brought to the Grand Jury and the Grand Jury I feel sure will have no other recourse but to return a great many indictments against Mr. Snyder for malicious defamation and violation of Article 47 of the Criminal Code." [2]

He further testified that this personal animosity "eroded" after the election in

2. This bias and prejudice is further evidenced by the testimony of Sylvan Fox, Manager of Station KSYL, to the effect that the district attorney admonished Fox for allowing relator time on the network and intimated that, if the radio station continued to allot time to relator, it might also be implicated in defamation charges he intended to bring after the election.

which relator was defeated, so that when he acted as advisor to the grand jury which returned the indictments for defamation of himself and others, as well as for perjury, he was released from this feeling of animosity or hostility.[3]

 The district attorney repeated this statement during his oral argument and, while we do not doubt that he is sincere in his belief that he has banished the personal animosity he harbored toward relator during the campaign, we do not believe that, under the circumstances presented, it would serve the public interest for him to remain in the case as prosecutor. For, after all, while he may believe that his per-

sonal animosity has subsided or eroded, still, where such deep-seated hatred has once evinced itself, the district attorney might, even though unconsciously, have impaired his power to conduct relator's trial fairly and impartially. We therefore hold that the district attorney should be recused in the case.

For the reasons assigned, the ruling of the trial judge is reversed; the motion to recuse is sustained and it is now ordered that the district attorney and his assistants withdraw from the prosecution of this case.

SANDERS, J., did not participate.

---

3. As an example of his explanation regarding his forgiveness, he was asked: "However, you apparently didn't forgive because you advised [as] counsel of the Grand Jury to return indictments involving—claimed defamation of yourself, didn't you?" the district attorney gave the following answer: "Well of course forgiveness is one thing, forgetting is something else and, of course, I have a duty under my oath and obligation under the law to present these things to the Court and in view of the fact that I had been one of those under attack, rather than substitute my judgment by way of bill of information, I chose to present them to the Grand Jury in order that those twelve men might exercise their judgment."