379 So.2d 1373 (1980)
PLAQUEMINES PARISH COMMISSION COUNCIL and Chalin O. Perez
v.
Leander H. PEREZ, Jr., District Attorney.
No. 66274.
Supreme Court of Louisiana.
January 24, 1980.
Rehearing Denied March 3, 1980.
*1375 Jerald N. Andry, Gilbert V. Andry, III, New Orleans, for defendant-applicant.
J. Minos Simon, J. Minos Simon, Ltd., Lafayette, for plaintiff-respondent.
Abbott J. Reeves, Gretna, Director, Research and Appeals, 24th Judicial Dist. Court, amicus curiae for Louisiana Dist. Attys. Ass'n.
DIXON, Justice.
Plaintiffs in this case are the Plaquemines Parish Commission Council, which constitutes the governing body of that parish, and the council's president, Chalin O. Perez, brother of defendant district attorney. In July of 1979, plaintiffs learned (according to their petition) of the theft of more than $200,000 of public funds by Michael M. Chauppette, a council employee whose official duties included the keeping of some public records. Chauppette is not a party to this suit. The theft was accomplished by the use of forged checks drawn against the council's account with the Delta Bank and Trust Company. Plaintiffs informed the district attorney of the theft and then, because the district attorney "did substantially nothing," executed affidavits before a justice of the peace, charging Chauppette with the offense. In August, 1979, a special grand jury was convened by the defendant district attorney.[1]
In this suit plaintiffs seek to compel the recusation of the district attorney and to enjoin him from taking any action with respect to the investigation of the theft by Chauppette and the investigation of the Plaquemines Parish Commission Council and its officials and employees "in conjunction with the Special Grand Jury in current session." The defendant district attorney filed exceptions of unconstitutionality, lack of subject matter jurisdiction and no right or cause of action, all of which were overruled by the trial court. Writs were granted to review the ruling on these exceptions.

Provisions for Recusal
Recusation of a district attorney, the action which plaintiffs have petitioned the district court to take, is provided for by C.Cr.P. 680, which states:
"A district attorney shall be recused when he:

*1376 (1) Has a personal interest in the cause which is in conflict with fair and impartial administration of justice;
(2) Is related to the party accused or to the party injured, or to the spouse of the accused or party injured, to such an extent that it may appreciably influence him in the performance of the duties of his office; or
(3) Has been employed or consulted in the case as attorney for the defendant before his election or appointment as district attorney."
The relative uniqueness of Louisiana's provision for mandatory recusation of a district attorney is reflected by the fact that a 1960 survey of ten states[2] selected at random from among those jurisdictions with the most up-to-date procedures revealed that only one of those states, Missouri, provided by statute for recusation of a district attorney; in that state, however, recusation was discretionary with the trial judge, not mandatory. Pugh and Pugh, The Work of the Louisiana Supreme Court for the 1958-1959 Term, 20 La.L.Rev. 201, 321 (1960). In most jurisdictions, disqualification of a prosecuting attorney is governed by those general principles of professional ethics which relate to the protection of confidentiality and the prohibition against the representation of conflicting interests. Griffin, Annotation, Disqualification of Prosecuting Attorney on Account of Relationship with Accused, 31 A.L.R.3d 953 (1970).
The right to challenge the competency of an official conducting a trial appears to be rooted in the civil law: the Codex of Justinian provided for the recusation of a judge in order that litigation might proceed without suspicion, while the Siete Partidas of Spain contained broad provisions for recusing a judge on the grounds of fear, suspicion, and personal hostility. Putnam, Recusation, 9 Corn.L.Q. 1 (1923). The remedy of recusation entered the United States with the purchase of Louisiana. Putnam, supra; Slovenko, Je Recusel, 19 La.L.Rev. 644, 650 (1959). The Louisiana Code of Practice of 1825, article 338, provided four grounds for the recusation of a judge in civil cases. Act 303 of 1858 extended the remedy of recusation to those criminal cases in which a judge was related to a person charged with a criminal offense. In 1877, Act No. 35, the legislature amended § 1067 of the Revised Statutes of 1870, which contained the grounds for recusation of a judge, to provide for recusation of a district attorney on similar grounds.
The grounds for recusation of a district attorney established by the legislature in 1877 were his relationship, within certain specified degrees, to the party accused or party injured, and his prior employment or consultation by the accused. In promulgating the Code of Criminal Procedure in 1928, the legislature included an additional ground in Article 310, the section which provided for recusation of a district attorney: "if said district attorney shall have a personal interest adverse to the prosecution." In State v. Tate, 185 La. 1006, 171 So. 108 (1936), this court construed "a personal interest adverse to the prosecution" to include any interest on the part of the district attorney which was adverse to the state's interest in impartial justice. It therefore found that the trial court should have granted defendant's motion to recuse a district attorney who had been retained as counsel by plaintiffs in civil suits against defendant arising from the incident which also gave rise to the criminal charges. The court observed:
"The district attorney is a quasi judicial officer. He represents the State, and the State demands no victims. It seeks justice only, equal and impartial justice, and it is as much the duty of the district attorney to see that no innocent man suffers as it is to see that no guilty man *1377 escapes.... Therefore he should not be involved or interested in any extrinsic matters which might, consciously or unconsciously, impair or destroy his power to conduct the accused's trial fairly and impartially." 185 La. at 1019-1020, 171 So. at 112.
Article 680 of the Code of Criminal Procedure of 1967 codifies this view of the state's interest in prosecution by providing for recusation of a district attorney when he "[h]as a personal interest in the cause which is in conflict with fair and impartial administration of justice."[3]
It should be noted that recusation is not the sole method provided by Louisiana law for circumscribing a district attorney's exercise of his authority. Article 4, § 8 of the Constitution empowers the attorney general, for cause and with the trial court's authorization, to institute, prosecute, or intervene in any criminal action or proceeding, or to supersede the district attorney in any civil or criminal action. The "cause" requirement refers to a showing that the district attorney is not adequately asserting some right or interest of the state. Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37 La.L.Rev. 765, 835 (1977). Article 10, § 25 of the Constitution and R.S. 42:1411-1412 empower the attorney general to institute suit for removal of a district attorney who is convicted of a felony while in office. District attorneys are also among those officials who may be impeached by the legislature for commission or conviction of a felony or for malfeasance or gross misconduct while in office, under Article 10, § 24 of the Constitution, or whose recall may be effected by an election ordered by the governor pursuant to a petition from the electorate, under Article 10, § 26 of the Constitution and R.S. 42:341 et seq. Among these methods, however, only recusation provides a means for protecting a particular defendant against prosecutorial bias.

Plea of Unconstitutionality
District Attorney Perez's plea of unconstitutionality rests, first, on the contention that C.Cr.P. 680 constitutes a legislative restriction, enacted without constitutional authorization, of the plenary powers granted to district attorneys by Article 5, § 26 of the Constitution, which provides:
"(B) Powers. Except as otherwise provided by this constitution, a district attorney, or his designated assistant, shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury. He shall perform other duties provided by law."
It is true that the other methods of limiting the prosecutor's powers, i. e. intervention or supersession by the attorney general, impeachment, removal, and recall, are specifically provided by the Constitution, while there is no specific constitutional provision for recusation. It is also true, however, that Article 1, § 2 of the Constitution provides that "no person shall be deprived of life, liberty, or property, except by due process of law," and that this court has defined the essence of due process as "protection from arbitrary and unreasonable action." Babineaux v. Judiciary Commission, 341 So.2d 396, 400 (La.1976). Due process is also defined by the Constitution itself to require impartiality. Article 1, § 22 provides:
"All courts shall be open, and every person shall have an adequate remedy by *1378 due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."
We find, therefore, that C.Cr.P. 680's provision for recusation is not only provided for but required by the constitutional guarantee of the fair and impartial administration of justice.
District Attorney Perez also contends that article 680 may not constitutionally provide for a district attorney's recusation from investigatory proceedings in which he is acting as legal advisor to, and the state's representative before, a grand jury. He bases this contention on the allegation that the secrecy accorded to grand jury proceedings by Article 5, § 34 of the Constitution[4] and C.Cr.P. 434[5] would be violated by the evidence introduced in support of a motion for recusation. A potential conflict with the constitutional and statutory provisions for secrecy of grand jury proceedings will not invalidate the recusal article. There is an adequate remedy for a potential violation of grand jury secrecy in the assertion of the privilege implicitly created by the secrecy provisions of C.Cr.P. 434, at the time the secrecy is threatened.
The plea of unconstitutionality was therefore properly denied.

Exception of Lack of Jurisdiction Over the Subject Matter
Jurisdiction over the subject matter is defined by C.C.P. 2 as "the legal power and authority of a court to hear and determine a particular class of actions or proceedings..." Article 5, § 16 of the Constitution confers upon district courts "original jurisdiction of all civil and criminal matters," except as otherwise authorized by the Constitution. See Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (1971). Because the Constitution makes no exception to this general jurisdiction for recusation proceedings, the district court clearly has jurisdiction over this action, and defendant's exception was properly overruled.

Exception of No Right of Action
The exception of no right of action raises the issue of whether plaintiffs belong to the particular class in whose exclusive favor C.Cr.P. 680 provides the remedy of recusation. Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972); McMahon, The Exception of No Cause of Action in Louisiana, 9 Tul.L.Rev. 17 (1934). While the text of the recusation article is silent on this point, it is clear from the history of the provision for recusation, traced above, that the remedy was developed in order to provide a form of protection against bias and partiality to one prosecuted for commission of a criminal offense. C.Cr.P. 381 defines a criminal prosecution as a prosecution instituted "for the purpose of bringing to punishment one who has violated a criminal law." Because the Plaquemines Parish Commission Council, one of the plaintiffs here, is insusceptible of being brought to punishment, it can not be *1379 the object of a criminal prosecution. The council is therefore not a member of the class to which the remedy of recusation is extended, so that it has no right of action under article 680. The trial court's overruling of defendant's exception of no right of action with regard to the council must be reversed and the council's action for recusation dismissed.
With regard to plaintiff Chalin O. Perez, on the other hand, criminal prosecution is not an impossibility. The trial court was therefore correct in overruling defendant's exception of no right of action, as to him.

Exception of No Cause of Action (Recusal)
In Hero Lands Co. v. Texaco Inc., 310 So.2d 93, 96 (La.1975), we presented the following analysis of the exception of no cause of action:
"The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition. The correctness of the well-pleaded allegations of fact is conceded, the issue is whether the face of the petition presents a case which legally entitles the mover to the redress sought. It is the sufficiency of the petition or motion in law which is put at issue by the exception. Rebman v. Reed, 286 So.2d 341 (La.1973); Louisiana State Board of Medical Examiners v. England, 252 La. 1000, 215 So.2d 640 (1968).
If a petition states a cause of action as to any ground or portion of the demand, the exception of no cause of action must be overruled. Louisiana & Arkansas Railway Company v. Goslin, 258 La. 530, 246 So.2d 852 (1971); Burns v. Genovese, 254 La. 237, 223 So.2d 160 (1969); Little v. Haik, 246 La. 121, 163 So.2d 558 (1964); Elliott v. Dupuy, 242 La. 173, 135 So.2d 54 (1961);. United Mine Workers v. Arkansas Oak Flooring Co., 238 La. 108, 113 So.2d 899 (1959).
In considering a petition against which an exception of no cause of action has been raised, every reasonable interpretation must be accorded its language in favor of maintaining the sufficiency of the petition and affording the litigant an opportunity to present his evidence. Eschete v. City of New Orleans, 258 La. 133, 245 So.2d 383 (1971); Erath Sugar Co. v. Broussard, 240 La. 949, 125 So.2d 776 (1961). Pleadings must be reasonably construed so as to afford litigants their day in court, to arrive at the truth and to avoid a miscarriage of justice. Budget Plan of Baton Rouge, Inc. v. Talbert, 276 So.2d 297 (La.1973)."
On the part of Chalin Perez, who alone has a right of action under article 680, the petition for recusation alleges that the district attorney has a disqualifying personal interest in the cause and is employing the current investigation as a means of gratifying his personal animosity against his brother. In determining the legal sufficiency of the petition, we must concede the correctness of this allegation, Hero Lands Co. v. Texaco, supra. The questions before us are whether, under article 680(2), Leander Perez, Jr. is related to Chalin O. Perez to such an extent that the relationship may appreciably influence him in the performance of the duties of his office, and the more difficult questionwhether the provision for recusation may be interpreted to apply to an investigation as well as to a prosecution.
With regard to the first issue, we note that the relationship between brothers is a relationship of the second degree while, up until the drafting of article 680's more general language on this point, recusation was mandatory when parties were related within the fourth degree. We also note that an allegation of personal animosity, even in the absence of a blood relationship between the parties, was found to be sufficient ground for a hearing on a motion for recusation in State v. Marcotte, 229 La. 539, 86 So.2d 186 (1956). Similarly, in State v. Snyder, 256 La. 601, 237 So.2d 392 (1970), this court held that the trial court erred in denying a motion for recusation of a district attorney who admitted previous strong personal animosity toward the defendant but testified *1380 that this feeling had dissipated by the time he acted as advisor to the grand jury which indicted the defendant. The court observed that ". . . where such deep-seated hatred has once evinced itself, the district attorney might, even though unconsciously, have impaired his power to conduct relator's trial fairly and impartially." 256 La. at 610, 237 So.2d at 395.
The "personal interest" of the district attorney arises, according to the petition, from Chauppette's theft of Plaquemines Parish Commission Council funds in excess of $200,000. An employee of the council, Chauppette is said to have forged checks on the council's account with the Delta Bank and Trust company. The thefts are said to have been of such magnitude that they could only have been accomplished with the cooperation of officers or employees of the bank, either intentionally or through gross negligence. The district attorney, Leander Perez, Jr., is chairman of the board of directors of the Delta Bank, and a major stockholder. In addition to his alleged personal interest in avoiding the possibility of financial loss or even personal blame or responsibility for the loss of parish funds in the Chauppette thefts, the petition alleges a second form of personal interest: that the district attorney is actively opposing efforts of his brother to form a new bank in the parish to handle the six or eight million dollars of parish funds now deposited annually in the Delta Bank.
The special grand jury, says plaintiff, directed toward an inquiry into the misuse of parish property by the council and those associated with it, is designed to divert public attention away from Chauppette's theft and toward council misconduct.
Plaintiff Chalin Perez believes he is the object of an effort by his brother to "destroy" him because of the personal animus and the economic and political threat to the district attorney's future.
If plaintiff is charged with a crime, kindship alone will require the recusal of the district attorney, as defendant readily admits. C.Cr.P. 680. Plaintiff has not been charged, arrested, subpoenaed or questioned. Article 680 refers to the matters from which the district attorney may be recused as: the "cause" (C.Cr.P. 680(1)), the "case" (C.Cr.P. 680(3)); or a matter in which there is an "accused" (C.Cr.P. 680(2)). Here there is no "accused" and no "case." If there is a "cause," it is the investigation described by plaintiff. Plaintiff, however, describes no particular offense for which he fears a bad faith prosecution. What he seeks protection from is an investigation to discover some offense for which the plaintiff might be prosecuted.
Recusal cases before, in this state, have all dealt with identifiable cases in which the one moving to recuse has been accused of a crime. Article 680 can be construed, in its second paragraph, to apply to a criminal matter in only one situation in which there is not yet an accused: article 680(2) requires the district attorney to be recused when he is related to the party injured.
Plaintiff seeks to recuse the district attorney, in the words of the petition, from the "criminal investigation of the Chauppette theft and the criminal investigation of the Parish Commission Council and Chalin O. Perez." The Chauppette theft is both a "case" and a "cause." It consists of identifiable criminal conduct and has resulted in accusation of crime. But Chalin Perez, the remaining plaintiff, has shown no reason to recuse the district attorney in the Chaupette case. Chaupette does not complain. If plaintiff fears the district attorney will not properly, fairly or vigorously prosecute Chauppette, the remedy is not recusal, which is a disqualification from acting. The failure to act, and to act properly may be "cause" for intervention by the attorney general (Article 4, § 8, La.Const.1974), but not grounds for recusal.
If there is no "case," no "cause," no "accused" and no "party injured," does article 680 require the court to recuse the district attorney from the "criminal investigation of... his brother and mortal enemy"?
*1381 The words chosen by the redactors of C.Cr.P. 680, we must assume, were not employed without careful consideration of their effect. It would have been simple to limit recusal to pending criminal prosecutions if the legislators had intended. It would likewise have been simple to extend to criminal investigations the right to recuse the district attorney.
The "case," "cause" and matters where there are parties "accused" or "injured" have a common provenance; they arise from conduct which might be criminal.[6] Murder, robbery, battery or unlawful conduct of any nature are causes which can be identified, significant events or occurrences which have substance and limits. The legislators probably intended that a district attorney should not investigate his brother for a murder or a theft which has occurred. No practical uncertainties would complicate the recusal of a district attorney with a real and personal interest in a particular theft when the recusal is sought by one under investigation. But how different it is to demand that the district attorney be removed from any criminal investigation of the plaintiff because the district attorney hates him!
Different values affect society's interest in a prosecution and in an investigation. The state may not go to any lengths to discover criminal conduct, but its interest in an ordered society will justify active, efficient, prompt, thorough criminal investigations. An investigator's zealous activity *1382 may serve society's interest, but a prosecutor's zeal might not. A fair and impartial trial, not a fair and impartial investigation, is our constitutional guarantee. The protection against an unfair investigation is a fair trial where illegally obtained evidence will be excluded, not a recusal of the investigator.
Of course a prosecutor is not free to harass the object of his investigation brother or not. No harassment is here allegedonly the fear that, motivated by hatred, the district attorney is investigating his brother (in the hope of bringing a criminal action, from which he will be recused). The freedom from investigation by one who hates the investigated is a condition to be hoped for, but not a right granted by statute, Constitution or jurisprudence.
We find, therefore, that the petition states no cause of action for the recusal of the defendant district attorney.

Exception of No Cause of Action (Injunction)
Plaintiffs' petition also seeks an order enjoining the district attorney, his assistant, agents and employees from taking any action and from exercising any of their powers in connection with the investigations of Chauppette and the council. The petition alleges that plaintiffs have no adequate remedy at law to secure themselves against the injury, loss and damage inflicted by the district attorney's wrongful conduct, and that the district attorney's continued use of his powers to gratify his personal animosity and to protect his financial interest will result in irreparable injury to the impartial administration of justice.
Injunctive relief is provided for by C.C.P. 3601, which states that "[a]n injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law ..."[7] The irreparable injury must be one for which there is no adequate remedy at law. Greenberg v. DeSalvo, 254 La. 1019, 229 So.2d 83 (1969). An irreparable injury has been defined as "one for which the party injured cannot be compensated adequately in damages, or for which the damages cannot be measured by a pecuniary standard." City of Lake Charles v. Lake Charles Ry., 144 La. 217, 221, 80 So. 260, 261 (1918). In O'Beirne v. Police Jury, 153 La. 357, 95 So. 862 (1923), this court held that irreparable injury will also be found if the act to be enjoined is contrary to public policy.
Because an injunction constitutes a form of active judicial interference with continuing activities, the courts have been very reluctant to grant such a remedy where the actions complained of are those of departments of the executive and legislative branches of government, in the exercise of their authority. In Durrett Hardware & Furniture Co. v. City of Monroe, 199 La. 329, 340, 5 So.2d 911, 915 (1942), this court noted:
"Under our system of government providing for a distribution of powers between the legislative, executive and judicial departments, it is of vital importance that no one department unduly interfere with or hinder any other department while the latter is acting or assuming to act within the scope of the particular powers reserved to it. . . ."
*1383 In Durrett this court found that, under Louisiana law, a municipality may be enjoined from passing an ordinance only when the threatened action is in direct violation of a prohibitory law.[8] If this showing cannot be made, injunctive relief is available only after the law has been enacted and a complainant is threatened with irreparable harm by its enforcement.
Where a law or ordinance contains criminal sanctions, the showing required for injunctive relief against its enforcement is even more exacting.[9] In this situation, the plaintiff must show not only that the statute or ordinance is manifestly unconstitutional and that he is threatened with irreparable injury, but also that his existing property rights will be destroyed by enforcement. Dobbins v. Los Angeles, 195 U.S. 223, 25 S.Ct. 18, 49 L.Ed. 169 (1904); LaBauve v. Louisiana Wildlife & Fisheries Commission, 289 So.2d 150 (La.1974), New Orleans Baseball & Amusement Co. v. City of New Orleans, 118 La. 228, 42 So. 784 (1907). Where these criteria cannot be met, injunctive relief is not available; the injured party's proper recourse against prosecution under an allegedly invalid law is to move to quash the bill on the ground that the offense charged is not punishable under a valid statute. C.Cr.P. 532.
In the instant petition, plaintiffs ask the court to interfere even more drastically with the law enforcement activities of the executive branch of government: what they seek to enjoin is not a threatened prosecution, but the investigative process itself. The investigatory authority of the district attorney is subsumed under his power to take charge of every criminal prosecution in his district and to represent the state before the grand jury and act as legal advisor to the grand jury. Constitution Article 5, § 26(B); R.S. 16.1; C.Cr.P. 61. In petitioning the court to bar the exercise of this constitutional and statutory authority, plaintiffs do not claim that they are threatened by the enforcement of an invalid statute, or that their existing property rights will be destroyed; they allege that the district attorney's investigatory activities will result in irreparable injury to the impartial administration of justice.
It appears that the only attempts heretofore made in this state to enjoin investigatory activities have been directed against various regulatory commissions and agencies, not against the law enforcement branch of the government. Even in those cases, injunctive relief is available only when irreparable injury is threatened by agency actions which are ultra vires, exceeding the agency's statutory authority. Good v. Louisiana Commission on Governmental Ethics, 370 So.2d 123 (La.App. 1st Cir. 1979), rehearing den. 1979, writ refused 1979; Louisiana Milk Commission v. Louisiana Commission on Governmental Ethics, 298 So.2d 285 (La.App. 1st Cir. 1974); *1384 Waters v. Karst, 235 So.2d 222 (La.App. 3d Cir. 1970). In the case before us, on the other hand, the district attorney's investigative activities are clearly within his constitutional and statutory authority, and they involve the enforcement of criminal laws.
A review of other states' jurisprudence reveals only one instance in which a criminal proceeding was enjoined during the investigatory stage, before any specific prosecution was threatened; this is, in itself, some indication of the drastic nature of the remedy which plaintiffs here are seeking. In McNair's Petition, 324 Pa. 48, 187 A. 498 (1936), writs of prohibition and mandamus were issued against a lower court judge, a district attorney and a grand jury, ordering that they cease an investigation of city magistrates. That holding was based, however, on the fact that Pennsylvania law imposed specific limitations on a trial court's authority to charge a grand jury to investigate and on a grand jury's investigatory powers. Because these limitations were exceeded, the investigative activities were conducted without authority. See Powell v. Pappagianis, 108 N.H. 523, 238 A.2d 733 (1968), in which a New Hampshire court, in dismissing a petition to enjoin the attorney general from an investigation, found that the holding of McNair's Petition was inapplicable because New Hampshire law contained no such limitations on investigatory powers. It should be noted that in Louisiana the grand jury's powers are not restricted by law, and that the grand jury itself has the power to open an investigation of any criminal matter. C.Cr.P. 437; Comment, Selected Problems of the Louisiana Grand Jury, 52 Tul.L.Rev. 707, 733 (1978).
In another case, Cutsinger v. Atlanta, 142 Ga. 555, 83 S.E. 263 (1914), the trial court dismissed plaintiff's petition to enjoin a city, its chief of police and other officials from prosecuting her under an ordinance discriminatorily applied, and from interfering with her business by repeated intrusive inspections of her premises. In reinstating the petition, the Georgia Supreme Court stated that injunctive relief is available where irreparable damage results from the arbitrary or capricious abuse of power. Because we agree with this proposition, we are of the opinion that an injunction against an existing investigation would be appropriate in some circumstances. In identifying those circumstances, we must balance the interest of the state and its citizens in uncovering and prosecuting conduct which has been defined as criminal by the people's legislative representatives, against the individual's interest in freedom from the abuse of power, even when that power is at least nominally within statutory grants of authority.
In so doing, we find relevant the standards employed in those few decisions of the federal courts which have granted injunctive relief against threatened state prosecutions. Those decisions similarly require balancing the individual's interest in freedom from the abuse of power[10] against a strong conflicting policy, that of federal nonintervention in state court criminal proceedings.[11]Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), was decided before the principle of federal nonintervention in pending state criminal prosecutions *1385 was fully enunciated,[12] and it involved the chilling effect of vague and overbroad statutes upon plaintiffs' highly protected First Amendment rights to freedom of expression. In finding that the district court had erred in dismissing plaintiffs' petition for declaratory and injunctive relief for failure to state a claim upon which relief can be granted, the United States Supreme Court noted that plaintiffs had attacked the good faith of various governmental officials who were acting to enforce certain statutes without any hope of ultimate success, but only to discourage plaintiffs' activities by continuing harassment.[13] In Shaw v. Garrison, 467 F.2d 113 (C.C.A. 5 1972), cert. den. 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972), a case decided after the full formulation of the non-intervention principle and one not involving First Amendment rights, the United States Fifth Circuit Court of Appeals held that a showing of bad faith or harassment was equivalent to a showing of irreparable injury, for purposes of the non-intervention doctrine, because there was a federal right to be free of bad faith prosecutions.[14]
In denying an injunction against threatened arrest in Holmes v. Giarrusso, 319 F.Supp. 832 (E.D.La.1970), because of the absence of a showing that the arrest would be made in bad faith, the court defined a bad faith arrest as one made with no expectation of conviction but merely to discourage the exercise of protected rights. Similarly, in Scott v. Frey, 330 F.Supp. 365 (E.D.La.1971), the court found that federal injunctive relief against threatened prosecution was available only upon a showing of irreparable injury based on bad faith prosecution or proven harassment.
We conclude, then, that a plaintiff who seeks to enjoin a criminal investigation must show, at a minimum, that he is threatened with irreparable injury in the form of prosecutorial bad faith or harassment, such as particularly oppressive investigations without any prospect of ultimate indictment and conviction. He must also show, of course, that the irreparable injury is one for which there is no adequate remedy at law. Plaintiffs' petition, in the light of this minimum standard, falls short of making the necessary showing. The petition alleges that the district attorney's investigatory activities are motivated by personal animosity and by a personal desire to protect his own financial interests. Such bad motives are a part, but not sufficient to constitute, by themselves, the kind of "bad faith" which would overcome the force of the strong public interest in identifying and prosecuting wrongdoers. The proof of the allegations of this petition would not justify a conclusion that the investigation of the theft by Chauppette and the investigation of the parish council and its members and employees is unnecessarily abusive, harassing or illegal, and without any possibility of ultimate indictment supported by probable cause for prosecution.
There appear to be adequate protections from some of the consequences of this investigation which plaintiffs fear. If, as plaintiffs allege, parish governmental *1386 activities are being disrupted by the issuance of unreasonable and oppressive subpoenas, the court has the power to vacate or modify these subpoenas under C.Cr.P. 732 and 439. If, as plaintiffs also allege, the district attorney's activities are causing the undue waste of public funds and are injuring the impartial administration of justice, the parish electorate may petition the governor for a recall election under Constitution Article 10, § 26 and R.S. 42:341 et seq.
Plaintiff Chalin Perez's fear of damage to his reputation by a criminal investigation, however real, is common to all citizens whose conduct falls under the scrutiny of a prosecutor or grand jury. "No person is immune from prosecution in good faith for his alleged criminal acts." Douglas v. City of Jeannette, 319 U.S. 157, 163, 63 S.Ct. 877, 881, 87 L.Ed. 1324, 1329 (1943). Nor is any person immune from a criminal investigation. The remedy is a fair trial, if the investigation discovers good cause for prosecution. Protection by injunction against a criminal investigation is not available in the absence of a showing of irreparable injury from prosecutorial bad faith, such as illegal, harassing or oppressive investigations without any prospect of ultimate indictment and conviction.
Plaintiffs' petition for an injunction against further investigation therefore fails to state a cause of action.
For these reasons, the judgment overruling defendant's exception of no cause of action is reversed, and the exception is sustained; plaintiffs' suit is dismissed, at plaintiffs' cost.
MARCUS and DENNIS, JJ., dissent and assign reasons.
WATSON, J., dissents for the reasons assigned by MARCUS and DENNIS, JJ.
DENNIS, Justice, dissenting.
I respectfully dissent from the majority holding and decree that the petition of Chalin Perez fails to allege grounds for recusation of the district attorney.
Chalin Perez alleged that the district attorney, his brother Leander Perez, Jr., should be recused as representative of the state before the grand jury during its investigation of him because (1) The district attorney has a personal interest in the cause which is in conflict with fair and impartial administration of justice, viz., the district attorney's personal hatred for his brother and his desire to prevent his brother from forming a new bank in competition with one in which the district attorney is a principal stockholder and serves as chairman of the board of directors; and (2) The district attorney's relationship to his brother combined with his intense feelings of hatred and rivalry for him may appreciably influence him in the performance of the duties of his office.
The majority correctly acknowledges that the allegations would state grounds for the district attorney's recusation if an indictment or bill of information had been filed against Chalin Perez. La.C.Cr.P. art. 680; State v. Snyder, 256 La. 601, 237 So.2d 392 (1970); State v. Marcotte, 229 La. 539, 86 So.2d 186 (1956). The prosecution argues, however, that the motion to recuse is premature until an indictment has been found. The majority opinion rejects this argument with respect to grand jury investigations of known crimes, but holds, without explaining the distinction, that a prosecutor with a personal interest or bias may not be recused so long as the grand jury investigation remains a general inquiry and has not focused on a particular offense.
The majority opinion reaches its result, ignoring petitioner Chalin Perez's rights to due process of law and fair and impartial administration of justice, by seizing upon an extremely narrow interpretation of our statutes. Its basic flaw is its failure to recognize that a grand jury investigation is a judicial proceeding in which a person may be deprived of his liberty and have his rights seriously affected. The distinction *1387 drawn by the majority affording a citizen no protection against a general fishing expedition, while allowing him to have a biased prosecutor recused from a focused investigation, has no foundation in constitutional or statutory law. Moreover, the majority misreads the legislative intent by refusing to consider a grand jury investigation to be a "cause" in which the district attorney may have a personal interest, and by refusing to construe the term "accused" to include a person under investigation by a grand jury. In my view, the majority opinion is mistaken in both its constitutional and statutory constructions.
The constitutions of our nation and state guarantee that no person shall be deprived of liberty except by due process of law. When a grand jury finds an indictment, a person not in custody or at large on bail must be arrested. La.C.Cr.P. art. 496. A person under indictment is formally accused of a crime, causing him to defend against the awesome prosecutorial power of the government and, oftentimes, the social stigma perceived by his peers. Consequently, a citizen under grand jury investigation faces deprivation of liberty and serious effects upon his rights and therefore is entitled to the protection of due process of law and fair and impartial administration of justice.
As the lone professional in a judicial proceeding otherwise conducted by laymen and as a high governmental official, the prosecutor has great influence with the grand jury throughout its hearings. Although the grand jury is in theory a check on prosecutorial discretion, in reality the jurors do not often assume their protective function, and a prosecutor can virtually obtain an indictment at will. See, e. g., Comment, The Grand Jury: Powers, Procedures, and Problems, 9 Col.J., L & Soc. P., 681, 701 (1973); Campbell, Delays in Criminal Cases, 55 F.R.D. 229 (1972). It is evident, therefore, that due process of law and fair administration of justice cannot permit a grand jury proceeding to be led by a prosecutor who is under the influence of either sibling hatred or hope of personal gain.
The majority correctly points out that there is no case on all fours with this one. But there are many canons, cases and laws which indicate that due process should afford an individual recourse from a demonstrably unfair grand jury proceeding.
The Code of Professional Responsibility, a set of rules adopted by this Court, having the force and effect of substantive law, see Singer, Hutner, Levine, Seeman & Stuart v. Louisiana State Bar Association, 378 So.2d 423 (La.1979), Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979), provides that "[t]he responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict." EC 7-13. Furthermore, every attorney must refrain from accepting employment, except with the consent of his client after full disclosure, if "the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests." DR 5-101. Accordingly, it is plainly unfair and unprofessional for a district attorney to continue representation of the state in a grand jury proceeding if his personal interest or relation to an investigated party conflicts with fair and impartial administration of justice.
Even courts in states which apparently have no prosecutor recusation statutes have fashioned remedies for skewed grand jury proceedings. They provide relief by holding that presentation of evidence before a grand jury by a prosecutor with a personal interest in prosecution to be ground for quashing an indictment. See Corbin v. Broadman, 6 Ariz.App. 436, 433 P.2d 289 (1967); State v. Rocker, 130 Iowa 239, 106 N.W. 645 (1906); see generally, Prosecutor, Disqualification, 31 A.L.R.3d 953.
The redactors of our code of criminal procedure have indicated that courts should construe broadly the legislation designed to maintain the right of every litigant to an impartial and disinterested tribunal. In determining whether a district attorney who has a personal interest in a grand jury *1388 investigation has "a personal interest in the cause ... in conflict with fair and impartial administration of justice," courts should turn first to the Official Revision Comment under Article 671, which provides comparable grounds for the recusation of judges. According to the redactors, the words "cause" and "case" are advisedly used in Title XXII, "Recusation of Judges and District Attorneys." La.C.Cr.P. art. 671, Official Revision Comment. While the word "case" is limited to "the particular criminal prosecution at bar," "[t]he broader word `cause' embraces the entire situation, in both its civil and criminal implications." Id. Thus, in deciding whether Chalin Perez has fairly alleged that the district attorney has a "personal interest in the cause," this Court should not apply a niggardly construction. On the contrary, its clear duty under the statute and the constitution is to determine, after considering the "entire situation," whether the prosecutor's personal interest is in conflict with fair and impartial administration of justice.
This Court itself has held that a "cause" arises in a criminal case for purposes of recusation before issue is joined between the state and defendant. In State ex rel. Martin v. Judge, 152 La. 768, 94 So. 389 (1922) this Court ordered a district judge, who was alleged to have been personally and politically interested in the relator's prosecution, either to recuse himself from presiding over a preliminary examination or appoint a judge of an adjoining district to determine whether he should be recused. Although the court recognized that a conviction could not be had on the charge, which was under affidavit, it reasoned that "[n]onetheless it is a proceeding in which the liberty of the accused depends.... The judge is called upon, therefore, to exercise his judicial powers and discretion by virtue of his office, in a manner which may affect seriously the rights of the accused." 94 So. pp. 390, 391.
The district attorney as the representative of the state before the grand jury is, like the judge in other proceedings, required to promote the fair and impartial administration of justice. The exercise of his discretion and the powers of his office also may affect seriously the rights and liberty of individuals. Surely, if Leander Perez, Jr. were the judge assigned to charge the grand jury and select its foreman, see La.C.Cr.P. arts. 413, 432, this Court would consider the allegations of the petition sufficient to warrant a hearing to determine if he should be recused because he was "personally interested in the cause." La.C.Cr.P. art. 671. In my opinion, it is even more crucial to the fair and impartial administration of justice that a prosecutor, alleged to be biased, not be allowed, without at least a hearing on the question, to represent the state before the grand jury and be its legal advisor, see La.C.Cr.P. art. 64, because he is the only professional and public official who may be present at the jury's sessions, see La.C.Cr.P. art. 433, examine witnesses before it, see La.C.Cr.P. art. 64, and present evidence to it. See La.C.Cr.P. art. 439. The prosecutor's influence with the grand jury is infinitely greater than that of the district judge.
Since in my opinion Chalin Perez alleges grounds for recusing the district attorney and his petition states a cause of action, I would not reach the question of injunctive relief. However, the majority's disposition of the injunction issue puts a troublesome gloss on the definition of "irreparable injury" which should not be approved.
The majority holds that Chalin Perez cannot enjoin the district attorney's investigation because he has shown no "bad faith or harassment." By requiring bad faith or harassment, the court has imparted a federal concept to Louisiana law. It is true that the federal concept to Louisiana law. It is true that the federal courts will not enjoin pending state prosecutions absent a showing of bad faith or harassment, Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), but this rule is not necessarily applicable in state courts. A federal court is restrained from interfering with a pending state prosecution *1389 on the principle that federal intrusion into the right of a state to enforce its own laws in its own courts is unwarranted except in exceptional circumstances. Wright, The Law of Federal Courts, § 52A (3d ed. 1976). Since the underpinning of the requirement that the petition for an injunction of a pending state prosecution must show badfaith or harassment is that a state court is competent to handle its own affairs, it is improper for this Court to utilize this federal rule in outlining the powers of a state trial court to enjoin a prosecution by a state district attorney. Indeed, by imposing the federal strictures on our courts, we deny a citizen the very relief the federal courts consider the province of the state courts.
I concur in the remaining portions of the majority opinion.
Accordingly, I respectfully dissent from the majority's decree and the portions of the majority opinion pertaining to the exception of no cause of action (recusal) and the exception of no cause of action (injunction).
MARCUS, Justice (dissenting).
La.Code Crim.P. art. 680 provides that a district attorney shall be recused when he has a personal interest in the "cause" which is in conflict with fair and impartial administration of justice. I consider that plaintiffs herein have sufficiently stated a cause and right of action to entitle them to a Hearing to determine whether the district attorney should be recused in this "cause." Accordingly, I respectfully dissent.
NOTES
[1] In October, 1979, the plaintiffs petitioned the Twenty-Fifth Judicial District Court to enjoin the district attorney from taking any further action in connection with the Chauppette theft and with the investigation of the council, its employees and officials, and to recuse the district attorney. A few days thereafter, both judges of the Twenty-Fifth Judicial District requested that this court recuse them from acting in the matter of plaintiffs' petition, and plaintiffs filed motions with this court seeking both the appointment of a judge to hear their petition and the issuance of a stay order against further investigation by the district attorney. On October 16, No. 65891, this court granted the judges' motion to be recused and appointed Honorable Julian E. Bailes as judge ad hoc, but denied the stay order. The following day, Judge Bailes issued a temporary restraining order against the district attorney, who immediately petitioned both this court and the Fourth Circuit Court of Appeal to dissolve that order. On October 19, both courts ordered that the temporary restraining order be dissolved. On October 24, Judge Bailes heard argument on the defendant's exception of prematurity to plaintiffs' motion for recusation. In that exception, the district attorney contended that an action to recuse him could not properly be brought until an indictment was returned or a bill of information was filed in the case. The exception of prematurity was maintained, plaintiffs applied to this court for supervisory writs, and on November 1, No. 65972, this court overruled the trial court and remanded the case for further hearings on plaintiffs' motion for recusation. At a hearing held pursuant to that order, the trial court denied defendant's plea of unconstitutionality and overruled his exceptions of lack of subject matter jurisdiction and no right or cause of action. We granted supervisory writs to review these rulings.
[2] These states were California, Indiana, Illinois, Minnesota, Missouri, New Jersey, New York, Pennsylvania, Washington and Wisconsin.
[3] The United States Supreme Court has similarly defined the public prosecutor's role. In Gannett Co. v. DePasquale, ___ U.S. ___, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), it stated:

"The Court has recognized that a prosecutor `is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a particular and very definite sense the servant of the law ... `Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314.... " ___ U.S. at ___, at ___, 99 S.Ct. at 2908, 61 L.Ed.2d at 624.
[4] Article 5, § 34 provides in pertinent part:

"(A) Grand Jury. There shall be a grand jury or grand juries in each parish, whose qualifications, duties, and responsibilities shall be provided by law. The secrecy of the proceedings, including the identity of witnesses, shall be provided by law."
[5] C.Cr.P. 434 provides in pertinent part:

"A. Members of the grand jury, all other persons present at a grand jury meeting, and all persons having confidential access to information concerning grand jury proceedings, shall keep secret the testimony of witnesses and all other matters occurring at, or directly connected with, a meeting of the grand jury. However, after the indictment, such persons may reveal statutory irregularities in grand jury proceedings to defense counsel, the attorney general, the district attorney, or the court, and may testify concerning them. Such persons may disclose testimony given before the grand jury, at any time when permitted by the court, to show that a witness committed perjury in his testimony before the grand jury. A witness may discuss his testimony given before the grand jury with counsel for a person under investigation or indicted, with the attorney general or the district attorney, or with the court."
A violation of this provision is punishable as constructive contempt of court.
[6] Our research has revealed some instances in which the courts of other jurisdictions have held that a prosecuting attorney should have been disqualified before the inception of the criminal trial itself. However, these cases seem to deal with a stage in the proceedings at which a "case" existed against the accused, in terms of his specific illegal conduct, and not with a purely investigative stage, the context of the petition before us here. Corbin v. Broadman, 6 Ariz.App. 436, 433 P.2d 289 (1967), review denied 1968, affirmed the quashing of an indictment returned after a grand jury investigation occasioned by the collapse of a title company. The prosecuting attorney before the grand jury had briefly worked in the law office of one of the defendants, at a time when two of the other defendants were clients of that firm. Although Arizona had no statutory provision for disqualification of a prosecuting attorney, the court found that disqualification on the ground of conflicting interests was mandated by the American Bar Association Canons of Professional Ethics, the Arizona State Bar Committee Opinions on Rules of Professional Conduct, and the due process and equal protection clauses of the state and federal constitutions. The court reasoned that, because the prosecutor should have been disqualified, his presence at the grand jury sessions violated the statute authorizing only specified persons to be present at such sessions, and that this violation was a sufficient ground for quashing the indictment. One of the bases for the court's decision was its reading of the United States Supreme Court's opinion in Beck v. Washington, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962) as holding that due process guarantees are applicable to grand jury proceedings; actually, however, the Beck court specifically declined to reach that issue.

In Ganger v. Peyton, 379 F.2d 709 (C.C.A. 4 1967), an attorney representing defendant's wife in a pending divorce action also acted as prosecutor in state court proceedings which resulted in defendant's conviction and sentence on a charge of assaulting his wife. Finding that the requirement of fundamental fairness assured by the due process clause of the Fourteenth Amendment had been violated by this conflict of interests, the Circuit Court of Appeals affirmed the district court in vacating the sentence on a writ of habeas corpus. See also State v. Rocker, 130 Iowa 239, 106 N.W. 645 (1906), quashing an indictment because the prosecuting attorney may have used information obtained while acting as counsel for the defendant, at that time plaintiff in a civil action, in examining witnesses before the grand jury and advising the grand jury; State v. Detroit Motors, 62 N.J.Super. 386, 162 A.2d 227 (1960), quashing an indictment on similar facts; Steeley v. State, 17 Okl.Cr. 252, 187 P. 821 (1920), quashing an information because the prosecuting attorney had previously made a brief appearance as substitute counsel for defendant; State v. Jones, 306 Mo. 437, 268 S.W. 83 (Mo. 1924), quashing an information because the prosecuting attorney was an interested party and finding that such a conflict of interests constituted a violation of due process. For a discussion of the potential for abuse by a district attorney for his grand jury powers, see Comment, Selected Problems of the Louisiana Grand Jury, 52 Tul.L.Rev. 707, 735 (1978), and Johnston, The Grand JuryProsecutorial Abuse of The Indictment Process, 65 J.Crim.Law and Criminology 157 (1974).
[7] The Code of Practice of 1870, precursor of the current Code of Civil Procedure, provided ten specific grounds for the mandatory issuance of injunctions in article 298. Article 303 provided for the discretionary issuance of injunctions, most significantly "when it is necessary to preserve the property in dispute during the pendency of the action, and to prevent one of the parties, during the continuance of the suit, from dilapidating the same, or from doing some other act injurious to the other party." The "irreparable injury, loss or damage" language of C.C.P. 3601 appeared in the Code of Practice as a prerequisite to the granting of a temporary restraining order, in article 297.2, while article 307 provided that an injunction might be dissolved if the act enjoined would not work an irreparable injury to the plaintiff. The Official Revision Comments to C.C.P. 3601 note that this article adopts the equitable rule established by article 303 of the Code of Practice.
[8] In so holding, the Durrett court cited New Orleans Water Works Co. v. City of New Orleans, 164 U.S. 471, 17 S.Ct. 161, 41 L.Ed. 518 (1895), in which the United States Supreme Court held, more broadly, that a city should not be enjoined from enacting an ordinance, and that the proper remedy for one alleging irreparable injury caused by an unconstitutional ordinance would be an injunction against its execution.
[9] The United States Supreme Court has found that, because no member of the community is immune from good faith prosecution for his alleged criminal acts, criminal prosecutions may not ordinarily be enjoined; the legality of the statute or ordinance on which the prosecution is based should properly be tested in defending the prosecution. Beal v. Missouri Pacific R. Corp., 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1940), Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). Similarly, this court stated in West v. Town of Winnsboro, 252 La. 605, 612, 211 So.2d 665, 668 (La. 1968):

"The assailed ordinance is a regulatory measure, enforceable by a penalty provision including fine and imprisonment. It is, therefore, criminal in nature. Thus the equity arm of civil courts have no jurisdiction to prevent the enforcement of such ordinances by injunction. LeBlanc v. City of New Orleans, 138 La. 243, 70 So. 212 (1915). The enforcement of criminal laws belongs within the exclusive province of those tribunals created for that purpose...."
[10] Most of the cases of this nature which have been considered by the United States Supreme Court since 1965 have involved allegations of interference with the highly protected First Amendment right to freedom of speech. Laycock, Federal Interference with State Prosecutions: The Need for Prospective Relief, 1977 S.Ct.Rev. 193, 207.
[11] The doctrine of non-intervention is based on principles of federalism and comity. Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); Huffman v. Pursue, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). The doctrine is codified in 28 U.S.C. § 2283, which provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."
[12] In 1971, in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and its companion cases, the United States Supreme Court held that the possible unconstitutionality of a statute on its face would not justify a federal injunction against a pending state court prosecution, absent a showing of bad faith, harassment or any other unusual circumstances calling for equitable relief.
[13] In Dombrowski, plaintiffs and intervenors had been arrested, their offices raided, and their records seized. Although the arrest warrants were subsequently quashed for lack of probable cause and the evidence seized was suppressed as the product of an illegal search and seizure, a grand jury summoned to investigate these parties returned indictments against them.
[14] Shaw, charged with conspiracy to assassinate President Kennedy, was acquitted after less than an hour of jury deliberation. On the next working day following the verdict of acquittal, he was charged by the district attorney with having committed perjury at the conspiracy trial.