969 So.2d 610 (2007)
STATE of Louisiana
v.
Robert BAILEY, Jr.
No. 2007-KK-1922.
Supreme Court of Louisiana.
December 7, 2007.
Writ denied.
CALOGERO, C.J., and KIMBALL, J., would grant.
JOHNSON, J., dissents with reasons.
JOHNSON, Justice, would grant the writ application and assigns reasons.
Robert Bailey, Jr., defendant, filed a motion to recuse LaSalle Parish District Attorney, J. Reed Walters, alleging that he has abused his prosecutorial authority by taking race into account when exercising his charging authority. On June 13, 2007, the trial court denied the motion to recuse the district attorney. Bailey sought writs to the court of appeal. The court of appeal denied Bailey's writ application.
The facts of this case are well known because of wide spread media coverage. Bailey is one of the six African-American youths,[1] known as the "Jena 6", who were arrested and charged with attempted second degree murder, and conspiracy to commit second degree murder, following an altercation at Jena High School on December 4, 2006, where a white student, Justin Barker was beaten.[2]
On August 31, 2006, several African-American students at Jena High School requested to sit beneath a large tree located on the school's grounds, which was known in the community as traditionally reserved only for white students. The African American students were granted permission by a school administrator, and they sat beneath the tree. The next day, September 1, 2006, students arrived on campus at Jena High School to find three nooses dangling from the large tree. On September 6, 2006, the Principal called an assembly. The Jena Police Department *611 asked that La Salle Parish District Attorney, J. Reed Walters, attend and speak at the assembly. The students believed to be responsible for hanging the nooses were identified, and the Principal of Jena High School, Scott Windam, recommended that they be expelled. However, the LaSalle Parish School Board, represented by District Attorney J. Reed Walters, determined that the noose hangings were a "prank," rather than a hate crime, and the District Attorney refused to use his authority to charge any students with a criminal offense. The white students found responsible received only a three days in-school suspension.
The mild punishment received by the white students involved in hanging the nooses on the school campus sparked a series of confrontations between African-Americans students and white students, and heightened racial tension throughout the town of Jena, Louisiana. On December 1, 2006, there was a private party at the Jena Fair Barn where Six Black youths, including 16 year-old Bailey attempted to enter the party, but were refused entrance. An unknown white male and the black students got into a fight, and all were told to leave the party. Once outside, the black students were involved in another fight with a group of whites males, who were not students. The Police were called to investigate. Justin Sloan, a white male, was charged with simple battery for his role in the fight.
On December 2, 2006, there was an altercation between three African-American students, including the defendant, and Matt Windam, an older white male, at the "Gotta-Go" convenience store. Windam alleged that Bailey and his friends chased him, that he ran to get his gun, and that the students wrestled it away from him. The District Attorney charged Bailey and two other African American students in connection with this incident, but no criminal charges were filed against the older white male involved in the altercation. The same weekend, Bailey was targeted and beaten in the head by several older white males while attending a party. Justin Sloan was the only attacker who was apprehended that night, and he was charged only with simple battery, a misdemeanor offense.
On December 4, 2006, another fight broke out, this time at Jena High school, where Justin Barker allegedly received several contusions as a result of the altercation, and was sent to the local hospital for treatment. He was released from the hospital within three hours, and was able to attend a school ring ceremony that evening. Bailey and five other African-Americans students were arrested and charged with aggravated second-degree battery in connection with the school fight involving Barker, and all six students were expelled from Jena High School. The District Attorney elected to charge all six of the African-American Students with attempted second-degree murder and conspiracy to commit second-degree murder in connection with the school fight.
Bailey alleges that he and other African-Americans were victims in several incidents, and the District Attorney failed to act because the perpetrators were white. At the hearing on the motion to recuse, the defense counsel was prevented from eliciting testimony about the District Attorney's role as advisor to the LaSalle Parish School Board, and his involvement in the decision to expel Bailey.
Our Justice system has failed if citizens can not expect equal protection of the law and equal application of the law.
Generally, the district attorney has charge of every criminal prosecution by the state in his district. La. Const. art. V, § 26. See also LSA-.C.Cr.P. art. 61. The *612 district attorney determines whom, when, and how he shall prosecute. LSA-C.Cr.P. art. 61. Nonetheless, it has long been the rule in Louisiana that the district attorney, as a quasi-judicial officer, must be fair and impartial, and animated by a sense of public duty, rather than stimulated by a hope of private gain. State v. Tate, 185 La. 1006, 1019, 171 So. 108 (1936). Thus, LSA-C.Cr.P. art. 680(1) provides:
A district attorney shall be recused when he:
(1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice[.]
In Plaquemines Parish Com'n Council v. Perez, 379 So.2d 1373 (La.1980), this court held that LSA-C.Cr.P. art. 680 is not an unconstitutional restriction of the plenary powers granted to district attorneys by La. Const. art. V, § 26 because the recusation provision found in Article 680 is required by the constitutional guarantee of the fair and impartial administration of justice. In reaching this conclusion, the court cited La. Const. art. I, § 2, which provides, "No person shall be deprived of life, liberty, or property, except by due process of law." Id., 379 So.2d at 1377. Additionally, the court cited La. Const. art. I, § 22, which provides, "All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights." Id., 379 So.2d at 1377-78.
The legislature first provided for the recusation of district attorneys in 1877. Id., 379 So.2d at 1376. At that time, the grounds provided for recusation of a district attorney were specified relationships to an accused or injured party, and prior employment or consultation of the district attorney by the accused party. Id. An additional ground for recusation was added in art. 310 of the 1928 Code of Criminal Procedure such that recusal was required if the district attorney had "a personal interest adverse to the prosecution." Id.
In Tate, the court ordered recusation under LSA-C.Cr.P. art. 310 (1928) of a district attorney who was employed as an attorney in several civil suits against the defendant, stating that a district attorney "should not be involved or interested in any extrinsic matters which might, consciously or unconsciously, impair or destroy his power to conduct the accused's trial fairly and impartially." Tate, 185 La. at 1020, 171 So. at 112. Subsequently, in State v. Marcotte, 229 La. 539, 86 So.2d 186 (1956), the Court followed Tate when it declared improper the trial court's refusal to hear evidence on a motion to recuse a district attorney for allegedly having a personal interest adverse to that of the prosecution. Subsequently, the grounds of recusation of a district attorney were placed in LSA-C.Cr.P. art. 680 and generally followed LSA-C.Cr.P. art. 310 (1928) and Louisiana jurisprudence. See LSA-C.Cr.P. art. 680, Comment (b). The former ground of "personal interest adverse to that of the prosecution" was changed to the current language of "personal interest in the cause which is in conflict with fair and impartial administration of justice" to codify the Tate decision and to address its criticism by two of the Marcotte Justices. See Id. See also Perez, 379 So.2d at 1377; Charles J. Yeager & Lee Hargrave, The Power of the Attorney General to Supercede a District Attorney: Substance, Procedure & Ethics, 51 La. L.Rev. 733, 746 (1991) ("The ethical ideal of Tate and its codification, article 680, is that of the district attorney as an excellent instrument of the law, who actualizes the law objectively in his professional choices and judgments, *613 but without the influence of personal or self interest in those judgments.").
This amended language was at issue in Perez. That case involved an alleged theft of public funds by an employee of the Plaquemines Parish Commission Council that was accomplished by the use of forged checks drawn against the Council's account with the Delta Bank and Trust Company. A special grand jury was convened by the district attorney to investigate the allegations. Plaintiffs, the Council and its president, brought suit to compel the recusation of the district attorney and to enjoin him from taking any action with respect to the investigation of the theft and of the Council. The Council president was the brother of the district attorney. The petition for recusation alleged the district attorney had a disqualifying personal interest in the cause because he was the chairman of the board of directors of the Delta Bank and a major stockholder. The petition also alleged the district attorney was employing the current investigation as a means of gratifying his personal animosity against his brother. In response to the suit, the district attorney filed several exceptions, including an exception of no cause of action.
In my view, based on the standard set forth above, I find that the record contains sufficient evidence for recusal of the LaSalle Parish District Attorney, J. Reed Walters. In the public statement, the District Attorney stated his intent to charge Bailey and his co-defendants with the harshest crimes, and to seek the maximum penalty allowed by law, while characterizing efforts to intimidate African-Americans as a "prank," and bringing only misdemeanor charges against the whites who assaulted Bailey.
NOTES
[1] The six charged were Robert Baily, Jr.(17 y.o.); Mychal Bell(16 y.o.);Carwin Jones (18 y.o.); Bryant Purvis (17 y.o.); Theodore Shaw (17 y.o.); and Jesse Ray Beard, who was charged as a juvenile because he was 14 years old at the time of the incident.
[2] The bill of information was amended to charge Bailey with aggravated second degree battery and conspiracy to commit aggravated second degree battery in violation of LSA-R.S. 14:34.7 A (1)(2) and B